**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KEVIN HUGHES,**<br>    **Petitioner,**<br><br>    **v.**<br><br>**JEFFREY BEARD, et al.,**<br>    **Respondents.** | **CIVIL ACTION NO. 06-250** |

## <u>MEMORANDUM AND ORDER</u>

**Katz, S.J.**                                            **September 25, 2007**

Before the court are "Respondents' Objections to the Magistrate Judge's Order Granting an Evidentiary Hearing" (Document No. 20), Petitioner's response (Document No. 28), and Respondents' subsequent reply (Document No. 33). For the following reasons, Respondents' objections will be sustained in part, and overruled in part, and the Order granting an evidentiary hearing (Document No. 19) will be vacated in part.

### I. Background

Respondents' objections arise from the Order granting an evidentiary hearing with respect to two of Petitioner's claims in his petition for a writ of habeas corpus. *See Hughes v. Beard, et al.*, No. 06-250, Document No. 19 (E.D.Pa. Apr. 5, 2007).

Petitioner was arrested on January 12, 1980, for the March 1, 1979 killing of nine-year-old Rochelle Graham. *Commonwealth v. Hughes*, 555 A.2d 1264, 1267 (Pa. 1989) ("*Hughes-1*"). Rochelle Graham was found murdered in the third floor bedroom of an abandoned three-story house at 1617 Olive Street in Philadelphia, Pennsylvania. *Id.* The medical examiner concluded that her injuries were consistent with attempted vaginal penetration and actual anal penetration, and that the cause of death was manual strangulation. *Id.* at 1268. After she was killed, Rochelle's body had been set aflame. *Id.* at 1267-8. The letters "PEA" were burned into the ceiling. *Id.* at 1267.

Rochelle's murder remained unsolved for approximately ten months. *Id.* at 1268. Then, on January 5, 1980, Petitioner forced thirteen-year-old Maria Oquendo into a bedroom of a vacant house. *Id.* There, he ordered her to undress and forced her to perform oral sex. *Id.* He stomped on her face, grabbed her from behind and tried to choke her. *Id.* She lost consciousness, but awoke a few minutes later in a closet. *Id.*

On January 10, 1980, after Maria identified Petitioner in a photo array, an arrest warrant was issued for Petitioner. *Id.* While executing the warrant at Petitioner's home, police noticed that the name "PEANUT" burned into the ceiling of Petitioner's bedroom. *Id.*

2

At the police station, Petitioner waived his rights and gave a full confession, admitting to the sexual assault and related crimes inflicted on Maria. *Id.* After noting the similarities in the Oquendo and Graham incidents, the detectives investigating the Graham homicide decided to question Petitioner. *Id.* Petitioner initially denied any involvement. *Id.* at 1269. However, after failing a polygraph test, Petitioner admitted to sexually assaulting and killing Rochelle Graham. *Id.* After being arrested on January 12, 1980 for the murder of Rochelle Graham, Petitioner again confessed to that crime. *Id.*

On January 21, 1980, Petitioner was evaluated by a court-appointed psychologist, Clare Wilson, to assist the trial court in determining whether to prosecute Petitioner as an adult for the charges involving Maria. *Commonwealth v. Hughes*, 865 A.2d 761, 771 (Pa. 2004) ("*Hughes-2"*). After a hearing on March 10-11, 1980, Petitioner's request to be prosecuted in juvenile court was ultimately denied. *Id.* Then, on May 6, 1980, Petitioner's trial proceedings were placed on hold, as Petitioner was found incompetent and transferred to the Philadelphia State Hospital. *Id.* However, on October 21, 1980, before the Honorable Berel Caesar, Petitioner was found to be competent and trial proceedings were resumed. *Hughes-1*, 555 A.2d at 1269. During a subsequent suppression hearing, Petitioner again raised the competency issue, but the late Honorable Robert A. Latrone still

3

found Petitioner competent.  *Id.* at 1270.

Petitioner's trial commenced on February 17, 1981.  *Hughes-2*, 865 A.2d at 772.  Petitioner's defense centered around his innocence, challenging his admissions to the detectives and emphasizing that he was at school on the day of the crime.  *Id.*  Petitioner's uncle testified that Petitioner had the intellectual capacity of a two-year-old, and that he had never seen Petitioner and his mother together.  *Id.*  Petitioner also testified in his own defense, denying his earlier confessions and maintaining that he did not sexually assault or murder Rochelle Graham.  *Id.*

The jury convicted Petitioner of first-degree murder, rape, involuntary deviate sexual intercourse and arson endangering persons.  *Id.* at 773.  At the penalty phase, the jury returned a death sentence, finding one aggravating circumstance and no mitigating ones.  *Id.*  Petitioner filed post-verdict motions and a direct appeal.  *Id.*  The trial court denied post-verdict relief and the Pennsylvania Supreme Court affirmed his conviction on appeal.  *See Hughes-1*, 555 A.2d at 1284.

In November of 1995, Petitioner requested and was granted a stay of execution, and counsel was appointed to pursue post-conviction relief.  *Hughes-2*, 865 A.2d at 774.  On June 12, 1996, Petitioner filed an "Amended Petition

4

Pursuant to the Post-Conviction Relief Act," which included the claims that his trial counsel failed to investigate, develop and present mental health defenses. *Id.* The Commonwealth filed a motion to dismiss, asserting that all of Petitioner's allegation were either waived, previously litigated, untimely by virtue of delay in filing the PCRA petition, or meritless. *Id.* The case was returned to Judge Latrone, who passed away before disposing of the case. *Id.* The case was reassigned to the Honorable C. Darnell Jones, II., who granted the Commonwealth's motion without an evidentiary hearing. *Id.* Following an appeal, the PCRA court issued an opinion, "noting that delay is a factor in evaluating the merits of a petition, and concluding that an evidentiary hearing was unnecessary, as [Petitioner's] claims were either previously litigated or without merit." *Id.* at 775.

On appeal, the Pennsylvania Supreme Court affirmed the denial of relief as to the guilt phase, but remanded for an evidentiary hearing on two claims of trial counsel's ineffectiveness at the penalty phase, including the claim that counsel failed to reasonably investigate Petitioner's background and mental health. *Hughes-2*, 865 A.2d at 815.

On March 1, 2005, the United States Supreme Court held that the Eighth Amendment forbids the execution of someone, like Petitioner, who was under age

eighteen at the time of his or her offense. *See Roper v. Simmons*, 125 S. Ct. 1183

(2005); Pet. for Writ of Habeas Corpus by a Prisoner in State Custody  ¶18,

*Hughes v. Beard*, No. 06-250 (E.D.Pa. Jan. 18, 2006) ("Writ Pet.").  Petitioner

amended his PCRA petition, then before Judge Jones on remand, to include a

claim under *Roper*.  (*Id.* ¶ 19)  On March 21, 2005, Judge Jones granted PCRA

relief as to the death sentence under *Roper*, but imposed a mandatory life-without-

parole sentence as required by Petitioner's first-degree murder conviction.  (*Id.* ¶

20)  Judge Jones then ruled that the remaining penalty-phase issues were moot and

the remand hearing unnecessary.  (*Id.*)  The Commonwealth did not appeal.  (*Id.*)

On January 18, 2006, Petitioner filed his Petition for Writ of Habeas Corpus

in the United States District Court for the Eastern District of Pennsylvania.  (*See*

*generally* Writ Pet.)  This court ordered Petitioner's case referred to the Magistrate

Judge for report and recommendation.  *Hughes v. Beard*, No. 06-250, Document

No. 4 (E.D.Pa. Feb. 3, 2006).  The Magistrate Judge granted an evidentiary

hearing into two of Petitioners claims: (1) ineffective assistance of counsel for

failure to request a competency hearing at the time of the March 10, 1980 transfer

hearing; and (2) ineffective assistance of counsel for failure to investigate,

develop, and present an insanity and/or diminished capacity defense during the

guilt phase of trial.  *Hughes v. Beard*, No. 06-250, Document No. 19 (E.D.Pa. Apr.

6

5, 2007).

On April 19, 2007, Respondents filed objections requesting that this court sustain their objections and vacate the Magistrate Judge's order granting an evidentiary hearing.  Respondents also moved for and were granted a stay of the evidentiary hearing, pending this court's final order in regards to Respondents' objections.  *Hughes v. Beard*, No. 06-250, Document No. 24 (E.D.Pa. Apr. 27, 2007).

## II.  Legal Standard

Petitioner's petition for a writ of habeas corpus is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

According to § 2254(d), a writ of habeas corpus will not be granted with respect to any claim that was adjudicated on the merits in State court proceedings, unless the adjudication of the claim resulted in a decision that was either (1) "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the States," or (2) "based on an unreasonable determination of facts in light of the evidence present in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).

All determinations of factual issues made by a State court shall be presumed

to be correct, unless the habeas petitioner can rebut "the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  In order to rebut the presumption of correctness of State court factual findings, a habeas petitioner may "develop clear and convincing evidence by way of [an evidentiary] hearing in federal court as long as he satisfies the necessary prerequisites."  *Lambert v. Blackwell*, 387 F.3d 210, 236 (3d Cir. 2004).

If it is determined that the habeas petitioner has failed to develop the factual basis of a claim in State court proceedings, an evidentiary hearing may only be granted if the petitioner shows that (1) the claim relies on "a new rule of constitutional law, previously unavailable, but made retroactive to cases on collateral review by the Supreme Court;" (2) the claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence;" or (3) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty."  28 U.S.C. § 2254(e)(2).

However, § 2254(e)(2)'s required finding that a habeas petitioner failed to develop "a claim's factual basis in State court proceedings is not established unless there is lack of diligence, or some greater fault attributable to the prisoner

8

or his counsel." *Williams v. Taylor*, 529 U.S. 420, 433 (2000).  However, if there was no lack of diligence at the relevant stages in the State court proceedings, the habeas petitioner "has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements."  *Id.* at 437.

Thus, if the habeas petitioner can establish that there was no lack of diligence and the failure to develop the factual record was not his fault, then a federal court may order an evidentiary hearing.  *Campbell v. Vaughn*, 209 F.3d 280, 286-7(3d Cir. 2000).  However, even if a federal court has the discretion to grant an evidentiary hearing, the court must determine "whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim."  *Id.* at 287.

**III.  Discussion**

The Magistrate Judge's April 5, 2007 Order grants Petitioner's request for an evidentiary hearing with respect to two claims: (1) ineffective assistance of counsel for failure to request a competency hearing at the time of the March 10, 1980 transfer hearing ("Claim 1"); and (2) ineffective assistance of counsel for failure to investigate, develop, and present an insanity and/or diminished capacity defense during the guilt phase of trial ("Claim 2").

9

As a threshold issue, this court finds no lack of diligence on the part of Petitioner triggering the heightened standard of § 2254(e)(2).  Nevertheless, with regard to Claim 1, this court finds that an evidentiary hearing would not be meaningful, as it would not have the potential to advance Petitioner's claim. As a result, Respondents' objections to Claim 1 are sustained and the portion of the Magistrate Judge's Order granting an evidentiary hearing on this claim is vacated. On the other hand, this court finds that an evidentiary hearing would be meaningful for Claim 2, as the hearing has the potential to advance Petitioner's claim.  Thus, Respondents' objections to Claim 2 are overruled.

### A.   The heightened standard of § 2254(e)(2) does not apply to Petitioner's request for an evidentiary hearing.

In order to be granted a federal evidentiary hearing, Petitioner need not meet the additional requirements of § 2254(e)(2).  § 2254(e)(2) only applies when a habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings.  28 U.S.C. § 2254(e)(2).  In order to trigger the heightened standard of § 2254(e)(2), the Supreme Court has interpreted the opening clause of § 2254(e)(2) to require "a lack of diligence, or some greater fault attributable to the prisoner or his counsel." *Williams*, 529 U.S. at 433.  Diligence "depends upon whether the prisoner made a reasonable attempt, in light of the information

available at the time, to investigate and pursue claims in state court; it does not
depend...upon whether those efforts could have been successful." *Id.* at 435.
Diligence will usually require that the habeas petitioner "at a minimum, seek an
evidentiary hearing in state court in the manner prescribed by state law." *Id.* at
437.

It is undisputed that Petitioner sought an evidentiary hearing in state court
on both Claims 1 and 2.  However, Respondents argue that Petitioner failed to
exercise diligence, as he did not request a state court hearing in a manner
*prescribed by state law.*  Respondents point to Petitioner (1) waiting seven years
after the conclusion of direct review to file his Post-Conviction Relief Act
("PCRA") petition, raising the two claims at issue; (2) making only a boilerplate
request for an evidentiary hearing and not the specific request required; and (3)
failing to proffer facts with respect to the reasonable grounds for the actions of his
former attorneys.  Resp'ts' Objections to the Magistrate Judge's Order Granting an
Evidentiary Hearing at 10-3, *Hughes v. Beard*, No. 06-250 (E.D.Pa. Apr. 19, 2007)
("Resp'ts' Objections").

However, the Supreme Court found that Congress's intent behind the
opening clause of § 2554(e)(2) was to ensure that "prisoners who are at fault for
the deficiency in the state-court record must satisfy a heightened standard to

obtain an evidentiary hearing." *Williams*, 529 U.S. at 433.  Thus, a lack of

diligence triggering the heightened standard of § 2254(e)(2) will only be found if

Petitioner's actions *caused* the deficiency in the state-court record.

Here, the Pennsylvania Supreme Court did not rely on any of the defects

alleged by Respondents.  Rather, it based its dismissal without an evidentiary

hearing on the merits of Petitioner's claims.  It could be argued that the PCRA

court did "issue[] an opinion, noting that delay is a factor in evaluating the merits

of a petition." *Hughes-2*, 865 A.2d at 774-5.  However, the PCRA court

ultimately concluded that "an evidentiary hearing was unnecessary, as

[Petitioner's] claims were either previously litigated or without merit." *Id.* at 775.

On appeal, the Commonwealth argued that the PCRA court properly

dismissed Petitioner's PCRA petition on timeliness grounds, but the Pennsylvania

Supreme Court found "no indication in [the PCRA Court's] opinion that any of the

claims were dismissed for this reason." *Id.* at 776.  The court refused to affirm the

PCRA court's dismissal of Petitioner's claims based on delay, instead moving on

to consider the merits of Petitioner's claims.  *Id.*  The court ultimately dismissed

both claims without an evidentiary hearing, finding Claim 1 to have been

previously litigated and Claim 2 to be without merit.  *Id.* at 777, 788.  The court

failed to even address the other defects highlighted by Respondents.

12

In other words, Petitioner's request for an evidentiary hearing in state court was ultimately denied by the Pennsylvania Supreme Court on the merits. Accordingly, none of the defects listed by Respondents actually caused the deficiency in the state court record.  Rather, the deficiency resulted from the state court denying Petitioner an opportunity to develop that record.  When a habeas petitioner has "diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court, § 2254(e)(2) will not preclude an evidentiary hearing in federal court." *Campbell*, 209 F.3d at 287 (internal citations omitted); *see also Thomas v. Varner*, 428 F.3d 491, 498 (3d Cir. 2005) (holding that a habeas petitioner whom the state courts denied a hearing was not at fault for failure to develop the record in state court).

Hence, any deficiencies in Petitioner's state court record are not due to a lack of diligence, nor are they attributable to Petitioner.  Thus, § 2254(e)(2) does not apply to Petitioner's request for an evidentiary hearing in federal court.

**B.     The court will exercise its discretion to grant an evidentiary hearing on Claim 2, but not on Claim 1.**

Considering the potential for an evidentiary hearing to advance Petitioner's claims, an evidentiary hearing will be held on Claim 2, but not on Claim 1.

As § 2254(e)(2) does not apply to the case at hand, it is in the court's

discretion whether or not to grant Petitioner's request for an evidentiary hearing. *Campbell*, 209 F.3d at 287.  In exercising this discretion, the court must focus on "whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Id.*  Petitioner must "forecast any evidence beyond that already contained in the record that would help his cause," or otherwise explain how his claim would be advanced by an evidentiary hearing. *Id.*

   1. The *Strickland* Standard for Ineffective Assistance of Counsel Claims

  Both Claims 1 and 2 are ineffective assistance of counsel claims governed by *Strickland v. Washington*, 466 U.S. 668 (1989).  In order for Petitioner to prevail on either claim, *Strickland* requires that Petitioner first show that counsel's performance was constitutionally deficient, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  In other words, "counsel's representation must fail to satisfy an objective standard of reasonableness, considering all the circumstances." *Taylor v. Horn*, No. 04-9016, --- F.3d ---, 2007 WL 2728668 at *10 (3d. Cir. Sept. 20, 2007) (*quoting Strickland*, 466 U.S. at 688).

  Petitioner must also show that his counsel's deficient performance

prejudiced the defense, or that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694.  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  This standard "is not a stringent one;" it is less demanding than the preponderance standard.  *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir.1999).  Unless petitioner "makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."  *Id.* at 687.

Moreover, the *Strickland* Court warned that "every effort [should] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  *Strickland*, 466 U.S. at 689; *see also Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986)*; Marshall v. Hendricks*, 307 F.3d 36, 105 (3d Cir. 2002).

### 2.      An evidentiary hearing on Claim 1 is not warranted.

An evidentiary hearing on Claim 1 is not necessary, as Petitioner will not be able to show that he was prejudiced by his counsel's failure to request a

competency hearing at the time of the March 10, 1980 transfer hearing.

The failure of counsel to request a competency hearing "could violate the defendant's right to effective assistance of counsel provided there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competence, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001).

Petitioner argues that his counsel's performance was deficient when he "failed to seek a competency hearing" at the time of the March 10, 1980 transfer hearing, knowing Petitioner was not competent at that time. (Writ Pet. ¶ 141) As sufficient indicia of Petitioner's incompetence, Petitioner points to the January 21, 1980 report of court psychologist Claire Wilson, as well as the testimony of Petitioner's grandmother at the transfer hearing itself. (Writ Pet. ¶ 36-9) Petitioner also claims that due to counsel's failure to adequately investigate Petitioner incompetence, he overlooked evidence that Petitioner "had a long history of illness, being out of touch with reality, being unable to comprehend his environment, being unable to communicate with others; and believing that he was specially protected from harm by magical forces." (Writ Pet. ¶ 143)

However, even if there were sufficient indicia of Petitioner's incompetence to give objectively reasonable counsel reason to doubt his competence, and even if the performance of Petitioner's counsel had been constitutionally deficient, an evidentiary hearing would still not be warranted.  When the issue of Petitioner's competence was raised and fully considered, Petitioner was found to be competent.  *Hughes-1*, 555 A.2d at 1269-70.  In fact, Petitioner was found competent at not one, but two competency hearings.  *Id.*  Thus, there is no reasonable probability that the Petitioner would have been found incompetent to stand trial if the issue had been raised and fully considered at the time of the March 10, 1980 transfer hearing, regardless of whether or not Petitioner's counsel should have requested a hearing.  *See Taylor*, --- F.3d ---, 2007 WL 2728668 at *18.

Moreover, assuming *arguendo*, that on the date of March 10, 1980, Petitioner was incompetent to stand trial, his defense still was not prejudiced by this error.  After March 10, 1980, the very next court proceeding in Petitioner's trial was a competence hearing on October 10, 1980.  Thus, Petitioner was found to be competent before he was actually tried for his crimes.  Plus, Petitioner's case barely progressed at all from the time Petitioner's counsel allegedly should have requested a competency hearing to the time one was actually held.  Thus,

17

Petitioner's defense was not prejudiced even if he was incompetent at the time of the March 10, 1980 transfer hearing.

With regard to Claim 1, Petitioner cannot satisfy the prejudice prong of the *Strickland* test.  As a result, Claim 1 must ultimately fail, and an evidentiary hearing would be meaningless.  Hence, Respondent's objections to Claim 1 will be sustained and the grant of an evidentiary hearing vacated.

> 3.   The grant of an evidentiary hearing with respect to Claim 2 is warranted.

An evidentiary hearing is necessary for Claim 2, because it has the potential to advance the claim that Petitioner's counsel was ineffective in failing to investigate, develop, and present an insanity and/or diminished capacity defense during the guilt phase of trial.

Strategic choices made by counsel "after full investigation are 'virtually unchallengeable,' but choices made after limited investigation are reasonable only to the extent that the limited investigation itself was reasonable."  *Taylor*, --- F.3d ---, 2007 WL 2728668 at *10 (*quoting Strickland*, 466 U.S. at 690-1).

Petitioner argues that his counsel was ineffective, because at the time of pretrial preparation, his counsel knew the following: (1) there was overwhelming evidence that Petitioner was the assailant; (2) when Petitioner confessed to the

homicide he told the police that voices made him do it; (3) Petitioner was seriously

mentally ill; (4) Petitioner's severe mental illness was likely to adversely affect

any trial-related decisions that the defense had to make, including decisions

regarding what defenses to present and whether Petitioner should testify; and (5)

Pennsylvania law at the time of Petitioner's trial was relatively favorable to the

insanity defense.  Pet'r's Resp. to Resp'ts' Objections to the Magistrate Judge's

Order Granting an Evidentiary Hearing at 4-5, *Hughes v. Beard*, No. 06-250

(E.D.Pa. Aug. 13, 2007) ("Pet'r's Resp.").  In support, Petitioner seeks to present

two expert witnesses to testify as to their opinions on potential mental health

defenses, as well as family members and friends to testify about Petitioner's

childhood and mental health.  (Resp't's Objections at 14)

> a. *Petitioner's testimony at trial does not bar a grant*
> *of an evidentiary hearing with respect to Claim 2.*

The Pennsylvania Supreme Court dismissed this claim without a hearing

noting that "where a defendant has testified at trial and has denied having

committed a crime, this Court has declined to deem counsel ineffective for failing

to present a defense that would have been in conflict with his client's own

testimony."  *Hughes-2*, 865 A.2d at 788.  Thus, the Court concluded that since

Petitioner testified to his innocence, "counsel cannot be held ineffective for failing

to present an inconsistent defense." *Id.* Respondents also argue that the "Third

Circuit has made clear that...it is reasonable to pursue an innocence defense where

the defendant denies the killing." (Resp't's Objections at 14)

However, to conclude that Petitioner in his testimony denied committing the

crimes, does not automatically bar the grant of an evidentiary hearing for an claim

of ineffective assistance. First, *Strickland* does not allow bright-line rules,

whether they "inure[] to the benefit or disadvantage of the defendant." *Lewis v.*

*Johnson*, 359 F.3d 646, 659 (3d Cir. 2004). Instead, it requires a case-by-case

analysis that considers "all the circumstances." *Strickland*, 466 U.S. at 688.

Ineffective assistance claims must overcome the presumption "that

counsel's conduct might have been part of a sound strategy...by showing either

that the conduct was not, in fact, part of a strategy or by showing that the strategy

employed was unsound." *Thomas*, 428 F.3d at 499-500. As this is a fact-intensive

inquiry, "*Strickland* requires an analysis based on a complete record." *Id.* at 498.[1]

The mere fact that Petitioner testified at trial as he did is insufficient for the court

---

[1]Notably, in one of the cases cited by Respondents, the court only denied a writ of habeas corpus after granting an evidentiary hearing on whether trial counsel was ineffective for failing to investigate, develop and present a diminished capacity defense during the guilt phase of trial. *See Porter v. Horn*, 276 F. Supp. 2d 278, 313 (E.D.Pa. 2003). In another of the cases cited by Respondents, a state post-conviction evidentiary hearing was held. *See Commonwealth v. Laird*, 726 A.2d 346, 352-3 (Pa. 1999).

to determine if Petitioner's trial counsel failed to investigate, develop or present mental health defenses, and if so, whether that failure was a sound trial strategy, or even part of a strategy at all.  Thus, Petitioner's trial testimony does not trigger a rule precluding an evidentiary hearing with regard to Claim 2.

Second, *Jacobs v. Horn*, upon which Respondents principally rely, does not apply broadly to all mental health defenses, but rather only to the diminished capacity defense. 395 F.3d 92, 107-9 (3d Cir 2005).  *Jacobs* holds that even if there is evidence to support a diminished capacity defense, it is reasonable for an attorney to pursue an innocence defense when the defendant denies the killing.[2] *Id.*  The case notes that under Pennsylvania law, the "diminished capacity defense is inconsistent with an assertion of innocence."  *Id.* at 108 (internal citations omitted).  Thus, trial counsel in *Jacobs* was forced to pick either a diminished capacity defense or an innocence defense, as Pennsylvania law does not allow the presentation of both.

However, *Jacobs* makes no mention of other mental health defenses, such as the insanity defense, as Pennsylvania law does allow a defendant to offer evidence

---

[2]Respondents also cite *Jacobs* as an example of a less-than-thorough investigation by counsel into potential mental health defenses that is held to be acceptable by the Third Circuit. (Resp't's Objections at 15-6)  On the contrary, the Third Circuit in *Jacobs* actually held that counsel's failure to investigate, develop and present a diminished capacity defense rendered his assistance ineffective under the Sixth Amendment.  *Jacobs*, 395 F.3d at 106.

of innocence and insanity concurrently.  *See Commonwealth v. Jermyn*, 533 A.2d 74, 83 (Pa. 1987).  The fact that evidence of one would be inconsistent with the other "is an inevitable consequence of the decision to rely on" both.  *Id.*  Although Petitioner could not present both innocence and diminished capacity defenses, he could still establish ineffective assistance of counsel in failing to investigate, develop and present other mental health defenses, as Petitioner could have presented innocence and insanity defenses simultaneously.  Thus, Petitioner's trial testimony did not bar the presentation of all mental health defenses.

Finally, any argument that Claim 2 should fail due to Petitioner's testimony at trial is subject to *Strickland*'s prohibition against hindsight in ineffective assistance claims.  Extending *Strickland*'s stricture against hindsight bias, the Third Circuit has explained that when trial counsel fails to reasonably investigate before trial, it is not proper that "the remainder of the trial [be] presumed to unfold as it actually did."  *Coss v. Lackawanna County Dist. Attorney,* 204 F.3d 453, 463 (3d. Cir. 2000) (en banc), *rev'd on other grounds*, 532 U.S. 394 (2001) (reversing on procedural grounds without reaching the merits).  It cannot be assumed that not only would Petitioner "still have testified on his own behalf, but also that he would have told the same tale that he did at trial."  *Id.*  Petitioner could even argue that absent his counsel's error, there is a "reasonable probability that [he] would not

have testified at all, or that he would have testified consistently" with otherwise

undeveloped evidence.  Hence, Petitioner should have the opportunity to show

that but for counsel's error, the trial would not unfolded as it did.

Thus, Petitioner's testifying to his innocence at trial does not bar the grant

of an evidentiary hearing on this claim of ineffective assistance of counsel.

> b.     *Specific intent does not bar Petitioner from satisfying the prejudice prong of Strickland.*

Respondents argue that an evidentiary hearing would not advance

Petitioner's claim because Petitioner cannot establish prejudice, as the evidence of

specific intent to kill is overwhelming.

Respondents are mistaken for two reasons.  First, Respondents again

conflate the defense of diminished capacity with that of insanity.  According to

governing case law, "evidence of specific intent to kill may disprove the defense

of diminished capacity." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 295-6 (3d Cir.

1991) (*citing Commonwealth v. Tempest*, 437 A.2d 952, 955 (Pa. 1981).

However, the insanity defense only requires that the actor "not to know the nature

and quality of the act he was doing or, if the actor did know the quality of the act,

that he did not know that what he was doing was wrong."  18 Pa.C.S. § 315(b).

Hence, insanity and specific intent to kill are not mutually exclusive, as "an insane

23

person has the capacity to kill with specific intent.  That is, he can premeditate, act willfully and deliberate." *Commonwealth v. Morley*, 658 A.2d 1357, 1366 (Pa. Super. 1995), *aff'd*, 681 A.2d 1254 (Pa. 1996).  Thus, specific intent would not prevent Petitioner from presenting an insanity defense at trial.

Second, the evidence of specific intent is not so overwhelming as to prevent Petitioner from satisfying *Strickland*'s prejudice prong.  Respondents point to several characteristics of Petitioner's crime, implying that the presence of each characteristic individually necessitates a finding of specific intent.[3]  (Resp't's Objections at 17-8)  While it is true that any one of these characteristics would be sufficient, when considered with the attendant circumstances, to support a finding of specific intent, they do not necessarily compel such a finding.  *See Commonwealth v. Shain*, 471 A.2d 1246, 1248 (Pa. Super. 1984) (defendant found guilty of third degree murder, instead of first degree murder, even though he stabbed the victim 57 times).  Hence, although it may ultimately be found that Petitioner had the specific intent to kill, the evidence of such is not so overwhelming as to entirely preclude Petitioner from ever establishing prejudice.

---

[3]Respondents argue specific intent is evidenced by Petitioner luring Rochelle to a vacant house, where they would not be seen by others; taking a moment of reflection, before approaching her from behind and locking his arm around her neck; killing Rochelle by manual strangulation and then setting her body on fire; and wanting to silence the only witness to his crime (motive).

Here, the evidence of specific intent is not overwhelming.  But even if it were, Petitioner would still be able to satisfy the *Strickland* prejudice prong, as specific intent is immaterial to the insanity defense.  Thus, specific intent does not bar the grant of an evidentiary hearing with respect to Claim 2.

## IV.  Conclusion

Any deficiency in the state record is not due to a lack of diligence on the part of Petitioner.  Therefore, he did not "fail to develop" the state record within the meaning of the opening clause of § 2254(e)(2), nor does he have to meet the heightened standard of that statute in order to be granted an evidentiary hearing.

Petitioner cannot establish prejudice under *Strickland* for Claim 1.  As a result, the court will not exercise its discretion to grant an evidentiary hearing with respect to Claim 1, as such a hearing would not have the potential to advance that claim.  Thus, Respondents' objections to Claim 1 are sustained and the portion of the order by the Magistrate Judge granting an evidentiary hearing for Claim 1 will be vacated.

Petitioner has shown that an evidentiary hearing would be meaningful for Claim 2, with the potential to advance that claim.  Therefore, the court in its discretion will allow an evidentiary hearing with regard to Claim 2, and

Respondents' objections to Claim 2 are overruled.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEVIN HUGHES,**<br>      **Petitioner,**<br><br>      **v.**<br><br>**JEFFREY BEARD, et al.,**<br>      **Respondents.** | **CIVIL ACTION NO. 06-250** |

## ORDER

**AND NOW,** this 25th day of September, 2007, upon consideration of Magistrate Judge Strawbridge's April 5, 2007 Order (Document No. 19), "Respondents' Objections to the Magistrate Judge's Order Granting an Evidentiary Hearing" (Document No. 20), Petitioner's response thereto (Document No. 28), and Respondents' subsequent reply (Document No. 33), it is hereby **ORDERED** as follows:

1.    Respondents' objections to the grant of an evidentiary hearing with respect to Petitioner's claim of ineffective assistance of counsel for failure to request a competency hearing at the time of the March 10, 1980 transfer hearing are **SUSTAINED**;

2.    The portion of the Magistrate Judge Strawbridge's April 5, 2007

Order granting an evidentiary hearing with respect to Petitioner's

claim of ineffective assistance of counsel for failure to request a

competency hearing at the time of the March 10, 1980 transfer

hearing is **VACATED**; and

3.      Respondents' objections to the grant of an evidentiary hearing with

respect to Petitioner's claim of ineffective assistance of counsel for

failure to investigate, develop, and present an insanity and/or

diminished capacity defense during the guilt phase of trial are

**OVERRULED**.


**BY THE COURT:**

**/s/ Marvin Katz**

_____

**MARVIN KATZ, S.J.**